Filed 5/3/16  Marriage of Gash and Ben-Noun CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of DRU GASH and LIMOR BEN-NOUN. | B258645 |
| DRU GASH, | (Los Angeles County Super. Ct. No. LD056298) |
| Appellant, | |
| v. | |
| LIMOR BEN-NOUN, | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marshall Rieger, Judge.  Affirmed.

Robert F. Smith for Appellant.

No appearance for Respondent.

Appellant Dru Gash appeals from an order denying without prejudice his request to modify a child support order. We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 7, 2011, Gash agreed to pay to his former wife Limor Ben-noun $1,000 per month in child support for their minor daughter. Thereafter, Gash filed a request to modify the support order and, in January 2013, the court found "a change of income to be temporary and therefore not a substantial change of circumstance to warrant a change in support orders from judgment of 7/7/2011."

On September 13, 2013, Gash, who was in default on his support obligation, filed the at issue request to modify the child support order. A back injury suffered in 2012 had gotten "progressively worse," and friends and family were supporting Gash. According to Gash's income and expense declaration, he worked about 20 hours per week and made $640 per month as a telemarketer. The child spent 95 percent of her time with mother. Gash then submitted, on July 11, 2014, another income and expense declaration stating that his job ended on April 1, 2014, and he worked 10 hours per week and made $600 per month. His financial situation changed significantly because he was "unable to work as much due to back injury and economy."

On January 17, 2014, the family court issued a seek-work order requiring Gash to conduct five job searches per week, 20 percent to be done in person. The parties returned to court on July 11, 2014, at which time Gash provided his job search record to the court. The court found Gash's job search to be deficient: the "Court finds that [Gash] has sought employment positions which he [cannot] do and there are not enough job searches on his schedule of job searches to comply with the court order." The court therefore denied the modification request without prejudice to refiling after completing appropriate job searches. The job search order remained in full force and effect.[1]

---

[1] Gash augmented the record with documents identified as his job search records.

2

## CONTENTIONS

Gash contends on appeal **I.** that he should not have been ordered to seek work because he had a job, that any such order should have been mutual, and that the family court's seek-work order form was arbitrary, **II.** that the court abused its discretion by denying his request to modify the child support order, and **III.** the proceeding violated his due process rights.

## DISCUSSION

### I. The seek-work order.

Gash contends that the family court's seek-work order was inappropriate, because he was not unemployed. Rather, he was self-employed and making $600 per month. Under Family Code section 4505,[2] subdivision (a), a court "may require a parent who alleges that the parent's default in a child or family support order is due to the parent's unemployment to submit" documentation showing that he or she has applied for work. A seek-work order is reviewed for abuse of discretion and is subject to reversal on appeal where there is no reasonable basis for the court's action. (*Barron v. Superior Court* (2009) 173 Cal.App.4th 293, 298-299.) Gash's contention that the court could not order him to seek work when he was in fact employed is forfeited, because Gash agreed to the order. At the January 17, 2014 hearing at which the court issued the order, Gash's counsel, after conferring with Gash who was present, said, "Your honor, my client is accepting of the court's order." In any event, there was a reasonable basis for the court's order: Gash claimed that his default in his support obligations was due to the "economy" and not just to his back injury.

Gash next contends that Ben-noun should also have been ordered to seek work. But Ben-noun, for over five and a half years, operated a "business cart" doing hair extensions in a mall. She had 90 percent custody of the minor child, and she had an 18-month child from her new marriage. The court declined to rule on the matter at the initial

---

**2** All undesignated statutory references are to the Family Code.

3

hearing in January 2014: "Actually, I think for today I'm going to go forward with what we have and go over. If she finds a better job, she can talk with her counsel. . . . But if she has a cart at a mall, my guess is someone owns it. It may be her. And I am not looking at tax returns, so I don't know yet. And if it's just an employment, she can look for additional work or to get a different job. But as I said before, the economy still isn't that good, and I know that jobs are somewhat scarce.

"[Gash's counsel]: Well, I –

"The court: If you don't look, you can't find it. If you want, you can file something for the next court date."

It appears that the family court found that mother was employed. Moreover, the court wasn't prepared to consider the issue that day. The court therefore invited Gash to "file something" to raise the issue, but the record does not show he did so. The court therefore did not abuse its discretion by failing to order Ben-noun to seek work.

Finally, it appears that the family court created a form for a party subject to a seek-work order to fill out. The form, entitled "Employment Search Record," had, for example, headings for "Name of business, person, union or other entity," "Address," "Telephone Number," "Position(s) Applied for," and "Application submitted in (P)erson (M)ail (F)ax (I)nternet." The form also had lines numbered 1 through 5 so that a party can list the five job searches he or she completed each week. Gash contends that the form "was not required by the statute and was in fact arbitrary." True, section 4505 does not require a form, but the section also does not preclude one. Moreover, we see no arbitrariness in a court, for its and the parties' convenience, creating a form to facilitate the process. (See Code Civ. Proc., § 128, subd. (a)(1), (8) [courts have power to control process and orders so as to make them conform to law and justice]; *Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1376-1377.) The form was a useful and convenient tool to show job search efforts.

Gash, however, chose not to fill out the form according to the court's instructions. Instead of listing all jobs he applied for on the form, he listed only his in-person ones. He

4

submitted a separate printout of his on-line applications. Although Gash failed to comply with the court's order, the court did not reject Gash's job search efforts on that ground. The record instead shows that the court considered Gash's efforts but concluded they were deficient. We therefore reject Gash's suggestion that the court "arbitrarily" rejected evidence of his job search efforts.

**II.     The request to modify the child support order.**

Gash contends that the family court abused its discretion by denying his modification request without prejudice. We disagree.

We review an order modifying a child support order for an abuse of discretion. (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1233-1234; *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 555.) A reduction in child support will not be ordered unless there has been a material or substantial change of circumstances since entry of the previous order. (*In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 392; *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47.) " 'Ordinarily, a *factual* change of circumstances is required [for an order modifying support] (e.g., increase or decrease in either party's income available to pay child support).' [Citation.] 'There are no rigid guidelines for judging whether circumstances have sufficiently changed to warrant a child support modification. So long as the statewide statutory formula support requirements are met (Fam. [Code,] § 4050 et seq.), the determination is made on a case-by-case basis and may properly rest on fluctuations in *need or ability to pay*.' " (*In re Marriage of Leonard*, at p. 556; see also *In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1015 ["the overriding issue is whether a change has affected either party's financial status"].)

In determining income for support purposes, a court may also consider a child support obligor's earning capacity, consistent with the best interests of the children. (See generally § 4058, subd. (b).) A parent may not shirk his or her parental obligations by reducing earning capacity through unemployment or underemployment. (*In re Marriage*

5

*of Hinman* (1997) 55 Cal.App.4th 988; *In re Marriage of Dacumos* (1999) 76 Cal.App.4th 150, 155.)

Implicit in the court's seek-work order here was a finding that Gash, who based his modification request on an injury that limited his ability to work *and* on the poor economy, failed to establish he was maximizing his earning capacity. The court thus ordered Gash to seek work so that the court could establish his earning capacity. But the court found that Gash failed to comply with that order and denied the modification request on that ground. The record supports that finding. Gash's printout of his on-line job searches did not include all information the court requested to enable it to evaluate Gash's applications. Gash also applied for jobs (for example café supervisor and restaurant manager) that he appeared to be unqualified for and did not comply with his asserted physical limitations. The court thus noted, for example, that "[m]ost of the jobs that you are trying to get have activity. It doesn't seem like if you all of a sudden had pain and couldn't work that they would keep you. It seems like you are basically torpedoing having to work." The court thus suggested that Gash refile his modification request and support it with additional information from his doctor about the types of positions he could do. The court could then "limit the scope of what his job searches would be."

Gash's failure to establish his earning capacity, or lack thereof, precluded the family court from evaluating whether there was a material or substantial change in Gash's circumstances warranting a reduction in his support obligations. The court therefore did not abuse its discretion by denying the modification request without prejudice.

**III.     Due process in child support proceedings at Central Civil West.**

Gash suggests that because judges at Central Civil West who preside over support proceedings were once district attorneys in the child support enforcement department, the process is fundamentally unfair; i.e., it is the same as "having your divorce case decided by your mother-in-law." That the judicial officer once was a district attorney and that

support proceedings are heard in the same building that houses the child support enforcement office does not show that either the process or the judge was biased against Gash.  Also, "the mere fact a judicial officer rules against a party does not show bias." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1328.)

## DISPOSITION

The order is affirmed.  No costs on appeal are awarded.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, Acting P. J.

We concur:

LAVIN, J.

HOGUE, J.*

---

*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.